IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BOBBY R. RATHBURN                                                                                          PLAINTIFF

vs.                                         Civil No. 4:07-CV-04017

MICHAEL J. ASTRUE[1]                                                                                 DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Bobby R. Rathburn ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's application for SSI now before this Court was protectively filed on May 14, 2004,

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

and Plaintiff's application for DIB was filed on April 5, 2005.[3]  (Tr. 37-39, 378).  Both of these applications allege an onset date of July 25, 1994.[4]  (Tr. 37-39, 379-382).  Plaintiff claims that his disability stems from a history of a lumbar spine discectomy[5] and fusion at T12-L1 (Tr. 114, 209); shoulder reconstruction surgery (Tr. 157); chronic headaches (Tr. 149, 227); a bulging disc at L4-5 (Tr. 239); chronic back, neck and leg pain (Tr. 248); arthritic changes at C5 through C7 (Tr. 288); degenerative changes of the lumbar spine (Tr. 288); mild glenohumeral with osteophytes of the humeral heads of the shoulders (Tr. 288); weakness of both legs (Tr. 324); depression (Tr. 324); severe GERD (Tr. 328); peptic ulcer disease (Tr. 328); diffuse osteoarthritis (Tr. 328); encopresis (Tr. 328); adjustment disorder with mixed anxiety and depression (Tr. 338); hernia (Tr. 374); migrane headaches (Tr. 374); and dizziness (Tr. 425).  (Doc. No. 7, Page 4).

Plaintiff's SSI application was initially denied on October 11, 2004 and was denied again on reconsideration on February 8, 2005.[6]  (Tr. 383-384, 390-391).  Plaintiff requested an administrative hearing which was held on April 12, 2006 *via* video-conferencing in Texarkana, Arkansas and Little Rock, Arkansas.  (Tr. 409-448).  Plaintiff was represented by an attorney, Greg Giles, at this hearing.  *See id.*  Plaintiff and an independent Vocational Expert ("VE") Diane Smith[7] testified at this hearing.  *See id.*  At the time of this hearing, Plaintiff was forty-one (41) years old, which is classified as a

---

[3] Both of these applications were considered by the ALJ in his August 14, 2006 opinion.  (Tr. 14, 412).

[4] Based upon a prior application, Plaintiff was awarded a closed period of disability from July 1994 to July 1996.  (Tr. 12).  Therefore, the relevant time period for the current claim extends from July 1996 through the date of the current ALJ's decision on August 14, 2006.  (Tr. 10-20).

[5] "Discectomy" is defined as an "excision, in part or whole, of an intervertebral disc."  *PDR Medical Dictionary* 550 (3rd Ed. 2006).

[6] Only the dates from the SSI denials are included in the transcript.  The record, however, indicates that the DIB application was denied, both initially and on reconsideration, at a later date.

[7] Her "Resume of Experience and Background" is included in this transcript at Pages 30-34.

"younger individual" under 20 C.F.R. § 404.1563(c) (2007), and had completed the twelfth grade of high school. (Tr. 412).

On August 14, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB and SSI. (Tr. 12-20). In this opinion, the ALJ determined Plaintiff met the insured status requirements of the Act on July 25, 1994, the date Plaintiff stated that he became unable to work, and continued to meet them through September 30, 2001. (Tr. 19, Finding 1). The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date. (Tr. 19, Finding 2). The ALJ found that Plaintiff had a history of neck and back pain and mood disorder but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4 ("Listings"). (Tr. 19, Finding 3).

The ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 19-20, Findings 4-5). In evaluating Plaintiff's subjective complaints, the ALJ determined that "the claimant's subjective allegations are not borne out by the overall record and are found not to be fully credible." (Tr. 19, Finding 4). The ALJ based this credibility determination upon Plaintiff's medical records, the absence of medical restrictions placed on Plaintiff, Plaintiff's daily activities, Plaintiff's lack of medical treatment after 1997, and the absence of medical evidence to support his claim that he suffers from depression. (Tr. 16-18). The ALJ also evaluated Plaintiff's RFC and concluded Plaintiff could perform a wide range of light work, including the following:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday . . . sitting with normal breaks for a total of about 6 hours in an 8-hour workday . . . pushing and pulling of arm and leg controls.

3

(Tr. 15).

Based upon this RFC determination, the ALJ concluded that Plaintiff did not retain the ability to perform his PRW. (Tr. 19, Finding 6). The VE testified at the administrative hearing regarding this issue. (Tr. 444-448). The VE testified that Plaintiff's PRW included work as a construction laborer (semiskilled, heavy) and as a general labor handyman (unskilled, medium). (Tr. 444). The VE also testified that a hypothetical individual the same age as Plaintiff, with the same education, work experience, and RFC as Plaintiff who had a "poor ability" to understand, remember, and carry out complex job instructions; a "fair ability" to follow work rules, deal with coworkers, deal with the public, use judgment, interact with supervisors and deal with work stress, maintain attention and concentration, understand, remember, and carry out detailed but not complex job instructions, maintain personal appearance, behave in emotionally stable manner, relate predictably in social situations, and demonstrate reliability; and a "good ability" to function independently would not be able to perform Plaintiff's PRW. (Tr. 444-448). Based upon this testimony, the ALJ determined Plaintiff was not able to perform his PRW. (Tr. 19, Finding 6).

Next, the ALJ determined whether there was other work existing in significant numbers in the national economy that Plaintiff could perform, given his RFC, age, education, work experience, and other limitations. (Tr. 18-19, Finding 11). The VE also testified at the administrative hearing regarding this issue. (Tr. 444-448). The VE testified that Plaintiff would be able to work as a "racker," "trim attacher," or "checker" (over 10,000 such jobs regionally and 100,000 such jobs nationally) or as a "polish adjuster" (over 10,000 such jobs regionally and 200,000 such jobs nationally). Based upon this testimony, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision. (Tr. 20, Finding 12).

On January 31, 2007, the Appeals Council declined to review the ALJ's August 14, 2006 hearing decision. (Tr. 5-7). Subsequently, Plaintiff filed the present action. (Doc. No. 1). Plaintiff consented to the jurisdiction of this Court on March 2, 2007. (Doc. No. 4). Plaintiff and Defendant have both filed appeal briefs. (Doc. Nos. 7-8). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological,

or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ erred by (1) finding Plaintiff did not meet the requirements of the Listings, (2) finding Plaintiff retained the RFC for light work, and (3) discounting Plaintiff's subjective complaints of pain. (Doc. No. 7, Pages 3-18). In response, Defendant argues that Plaintiff has not met his burden of establishing that he meets the requirements of the Listings. (Doc. No. 8, Pages 2-3). Specifically, Defendant argues that Plaintiff has provided

"no specific objective medical evidence of record to support his contention that he meets the requirements of a listed impairment" and his argument that he meets these requirements should be "rejected out of hand." *See id.* Defendant also argues that the ALJ properly evaluated the objective medical evidence in the record and properly determined that Plaintiff retained the RFC for light work. *See id.* at 4-11. Finally, Defendant argues the ALJ properly considered, and rejected, Plaintiff's subjective complaints of pain pursuant to *Polaski* and the ALJ gave proper consideration to Plaintiff's subjective complaints and to his "chronic pain syndrome." *See id.* Because the Court finds the ALJ erred in this RFC determination, this Court will only address Plaintiff's second argument.

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace. *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)). The plaintiff has the burden of producing documents to support his or her claimed RFC. *See Cox*, 160 F.3d at 1206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination. *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001). Furthermore, this Court is required to affirm the ALJ's RFC determination if that

determination is supported by substantial evidence on the record as a whole. *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

In the present action, the ALJ's determination that Plaintiff retains the ability to perform light work and to lift up to twenty pounds, is not supported by substantial evidence in the record. Plaintiff claims that, due to his pain, he is only able to lift between three to six pounds. (Tr. 425). Plaintiff's medical records demonstrate that Plaintiff's injury to his back may limit him in his ability to lift up to twenty pounds. (Tr. 112-377). The ALJ, however, never fully developed the record and never ordered an MRI or requested additional examinations in order to determine the extent to which Plaintiff's back pain restricts Plaintiff in his ability to perform light work.

The medical records establish that Plaintiff underwent right shoulder reconstruction by Dr. J.T. Dehaan in late 1995. (Tr. 297). At the time his closed period of disability ceased in July of 1996, Plaintiff was still under the care of Dr. Dehaan, and Plaintiff had an appointment with Dr. Dehaan on July 30, 1996, for a follow-up visit. (Tr. 294). During this visit, Dr. Dehaan reported that Plaintiff had probably reached his maximum improvement in his right shoulder. (Tr. 291). Dr. Dehaan noted that Plaintiff had a number of symptoms in his lower extremities and that there was question as to whether Plaintiff had any problems in his back that were causing these symptoms. (Tr. 291). To determine whether Plaintiff's back problems were causing these symptoms, Dr. Dehaan scheduled Plaintiff for a EMG/NCV[8] test with Dr. Walby. (Tr. 291). Plaintiff, however, informed Dr. Dehaan on August 27, 1996, that he did not have the money to pay for the scheduled tests and would reschedule those tests when he did have the money. (Tr. 291). The medical records indicate that Plaintiff never rescheduled these tests nor had them performed. Later that year, on October 3,

---

[8] "EMG" is an abbreviation for an electromyogram while "NCV" is an abbreviation for "nerve conduction velocity." *PDR Medical Dictionary* 629, 1283 (3rd Ed. 2006).

1996, in response to an insurance inquiry, Dr. Dehaan reported that, as far as Plaintiff's shoulder was concerned, Plaintiff could perform light duty work but that he would still have to be examined by a back doctor. (Tr. 291).

Nearly a year later, on September 30, 1997, Plaintiff returned for a follow-up appointment with Dr. Dehaan and was still complaining of back and right shoulder problems. (Tr. 288). During this visit, Dr. Dehaan reported that there was nothing more he could surgically do for Plaintiff's shoulder and that Plaintiff would be permanently restricted from doing "heavy type labor." (Tr. 288). Subsequent to this appointment, there is no record of Plaintiff seeking any further medical care until April 2002, nearly five years later. Even this April of 2002 appointment was due to an injured wrist, not due to back or shoulder problems. (Tr. 376).

Plaintiff finally returned for a follow-up appointment with Dr. Dehaan on August 20, 2003. (Tr. 285-288). Dr. Dehaan noted that Plaintiff's motor and sensory functions of the upper and lower extremities were intact. (Tr. 288). Dr. Dehaan also noted that Plaintiff had no obvious limp, had a free range of motion in his hips, and a normal range of motion in both shoulders. (Tr. 288). Dr. Dehaan also noted, "it's going to be very difficult for him [Plaintiff] to work in the future given the amount of difficulty he's having with his back and his cervical spine." (Tr. 288). This opinion, however, is conclusory, is not based upon any analysis, and is not even supported by Dr. Dehaan's findings from August 20, 2003. Therefore, this opinion is not entitled to controlling weight. *See Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (holding that when a physician's opinion is inconsistent with his relatively mild examination findings, that physician's opinion is not entitled to controlling weight). Dr. Dehaan, however, also noted during this appointment that Plaintiff *needed to have a cervical and lumbar spine MRI scan completed in order to determine the extent*

9

*of his back injury.* (Tr. 288). Plaintiff was unable to afford an MRI and, as a result, did not have his back problems fully examined. On March 15, 2004, Plaintiff had a scheduled follow-up appointment with Dr. Dehaan, but Plaintiff did not keep this appointment. (Tr. 284).

On September 18, 2004, Plaintiff obtained medical care at Wadley Regional Medical Center for what was described as a "spontaneous development of back pain." (Tr. 329-332). No significant examination were reported, and Plaintiff was prescribed medication and was released. *See id.* On February 16, 2005, Plaintiff was examined by Dr. Bowen and reported that he had been on no medication. (Tr. 372). Dr. Bowen reported no significant examination findings and started Plaintiff on medications for chronic neck and back pain as well as depression. (Tr. 372). Dr. Bowen did not state the extent of Plaintiff's back pain or how Plaintiff's back pain may restrict Plaintiff in his ability to work. (Tr. 372). There is no record of Plaintiff seeking any further medical care after this appointment with Dr. Bowen. (Tr. 372-375).

Plaintiff's consultative examinations also provide inconsistent and inconclusive information on the limitations caused by Plaintiff's back pain. On August 12, 2004, Dr. Ivy McGee-Reed performed a consultative examination of Plaintiff. (Tr. 322-328). During this examination, Dr. McGee-Reed found that Plaintiff suffered from significant limitations in his ability to work. (Tr. 322-328). Dr. McGee-Reed found that Plaintiff suffered from "severe limitations" and that Plaintiff can only "walk, stand or sit a maximum of 10 minutes before requiring rest, a change in position." (Tr. 328). Dr. McGee-Reed also found that Plaintiff "cannot lift or carry heavy objects." (Tr. 328).

On September 21, 2004, Dr. D'Orsay Bryant, III also examined Plaintiff and noted that Plaintiff had no significant tenderness or spasm in the neck and shoulder. (Tr. 333-334). Dr. Bryant noted that Plaintiff's extremity reflexes and neurovascular status were intact, and there were no

paresthesias.[9] (Tr. 333). The only deficits in range of motion testing were 75 out of 90 degrees of flexion and 10 out of 25 degrees of extension of the lumbar spine. (Tr. 333). Plaintiff's X-rays were negative for acute bone injury. (Tr. 333). Dr. Byrant concluded that Plaintiff had neck pain and lower back pain but that he could sit, stand, handle objects, speak, and travel. (Tr. 333). Dr. Bryant, however, also noted that Plaintiff indicated that he had pain with bending, lifting, and carrying objects. (Tr. 333). Dr. Bryant did not state *how much* weight caused Plaintiff back pain or whether Plaintiff would be able to perform light work.

Plaintiff's medical records, dating from 1995 until 2005, all indicate that Plaintiff suffers from severe back pain. In 2003, Dr. Dehaan noted that Plaintiff suffered from severe back pain and would need to be sent for an MRI. (Tr. 288). Plaintiff, however, was never sent for that MRI because he could not afford the MRI. In 2004, Plaintiff was examined by Dr. Bryant, who noted that Plaintiff complained of serious back pain, but Dr. Byrant did not examine Plaintiff to determine the extent to which Plaintiff was limited by that back pain. (Tr. 333-334). In 2004, Plaintiff was examined by another consulting physician, Dr. McGee-Reed, who found that Plaintiff was seriously limited in his lifting ability. There is nothing in the record to contradict Dr. McGee-Reed's finding. This evidence indicates that Plaintiff's back pain limits him in his ability to perform work, and, apart from Dr. McGee-Reed's findings, nothing in the record explains the extent of that limitation. On remand, the ALJ is directed to further develop the record regarding Plaintiff's back pain and to further evaluate Plaintiff's limitations due to his back pain.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits

---

[9] "Paresthesia" is a "spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking); may be due to lesions of both the central and peripheral nervous systems." *PDR Dictionary* 1425 (3rd Ed. 2006).

to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 13th day of November, 2007.**

                                            /s/   Barry A. Bryant
                                           Honorable Barry A. Bryant
                                           United States Magistrate Judge